# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 1:19CR14** |
| **v.** | **Judge Barrett** |
| **TIMOTHY BRITTON**<br>a/k/a "Kevin Sanders" | **GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S POST-HEARING BRIEF** |

The United States submits the following response in opposition to the Defendant's Post-Hearing Brief (Doc. 34): following his motion to suppress evidence seized on October 29, 2018. The stop of the Defendant was reasonable and constitutionally valid. In support of its position, the United States respectfully submits the following memorandum:

Respectfully submitted,

DAVID M. DEVILLERS
United States Attorney

*s/John Zachary Kessler*

JOHN ZACHARY KESSLER (0090932)
Special Assistant United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: 513-639-2482
Fax: (513) 684-6385
E-mail: Zach.Kessler@usdoj.gov

## MEMORANDUM

## BACKGROUND

On October 29, 2018 Cincinnati Police Officer Caleb Sarchet, in the West End neighborhood of Cincinnati, travelled behind the Defendant, Timothy Britton, on Poplar St. for more than 100 feet as the Defendant approached the intersection at Linn. The officer further observed that the Defendant did not activate his turn signal until already in that intersection before turning right onto Linn St. The officer also observed the window tint on the Defendant's side and back windows to be excessively dark. After making these observations, the officer stopped the Defendant for violating Cincinnati Municipal Code § 506-80, which requires that a "signal of intention to turn or move right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning," and for excessive window tint, a violation of O.R.C. § 4513.241.

While investigating this traffic stop, the officer noticed a strong odor of marijuana coming from the Defendant's motor vehicle. Subsequent search of the motor vehicle yielded discovery of a firearm, eventually the subject of the indictment in the instant case for violation of 18 U.S.C. § 922(g)(1).

On June 29, 2019 the Defendant filed a motion to suppress evidence based on his assertion that the officer lacked probable cause to stop the Defendant's motor vehicle on the above date. On November, 20 2019 the Court held a hearing on that matter.

## ARGUMENT

The Court should deny Britton's Motion to Suppress because his stop was reasonable and supported by probable cause.

**THE STOP OF BRITTON WAS REASONBLE.**

"A police officer legally may stop a car when he has probable cause to believe that a civil traffic violation has occurred." U.S. v. Blair, 524 F.3d 740, 748 (6th Cir. 2008) "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." U.S. v. Jackson, 470 F.3d 299, 306 (6th Cir. 2006)(internal quotation marks omitted). Probable cause is a "flexible, common sense standard." U.S. v. Ferguson, 8 F.3d 385, 392 (6th Cir. 1993). It "does not require an actual finding of a violation, rather, a probability or substantial chance of criminal activity is all that is required. U.S. v. Huff, 630 Fed. Appx. 471, 495 (6th Cir. 2015)(unpublished)(internal quotation marks omitted)(concurring opinion).

The issue before the court, then, "is whether the officer had an objectively verifiable reason for pulling over Defendant's [car] in light of the facts and circumstances known to the officer at the time of the stop." U.S. v. Huff, 630 Fed. Appx. 471, 496 (6th Cir. 2015)(unpublished)(internal quotation marks omitted)(concurring opinion). Based on the evidence adduced at the motion hearing, the government has satisfied this standard.

    1. **Officer Sarchet had probable cause to believe the Defendant violated CMC § 506.80.**

CMC § 506.80 requires that drivers intending to turn a motor vehicle not do so without first "giving an appropriate signal." The statute is clear that such a signal is "appropriate" when a driver, intending to turn or move right or left, gives the signal "continuously during not less than the last 100 feet traveled by the vehicle before turning." As Officer Sarchet testified at the suppression hearing, he observed the defendant approach the intersection at Linn and Poplar for more than one hundred feet before reaching the intersection, and that the defendant did not turn his signal on until already in that intersection. (TR9) This is a violation of the CMC and the officer's observations of the defendant's actions account for probable cause of the same.

To refute the above, the Defendant in his brief argues that the one hundred feet of continuous signaling that CMC § 506.80 requires of a driver intending to turn is not properly measured from the intersection giving rise to the possibility of a driver's turn, but the point in fact of that driver's actual turn. (See ECF #34—Def's Brief Page 4). The Defendant contends, with respect to the above, that to turn with "reasonable safety," as he sought to do from Poplar onto Linn, visual obstructions at the intersection obligate that such a maneuver be completed only after the driver has travelled "past the stop [sign] quite a bit." (Id.)

The Defendant argues that, because of this, he was actually required to signal his turn one hundred feet of prior to where he turned, and not from the location of the intersection itself. This distinction, however, given the most favorable reading, does not carry the day. For it to even be relevant, the distance of "quite a bit" would have to itself amount to one hundred feet, or there would at least need to have been some assertion at some point that it did. In fact, there has never been such an assertion. Instead, what is on record is the testimony of Officer Sarchet, whom the Defendant cites as "highly familiar" with this area of Cincinnati (Def's Brief Page 4) in which he states that he observed the Defendant on the day in question for more than one hundred feet as he approached the intersection, and saw that that the Defendant did not active his turn signal until already in that intersection, or, in any case, "just before it," a distance he agreed was less than one hundred feet. (TR 10).

In support of its position, the Government offered into evidence at the hearing the officer's dash camera recording that captured video of the Defendant in the intersection without having first activated his turn signal. (Gov. Ex. 2). Due to the standard recording operatives of the device, this brief duration of the Defendant's time in the intersection is all that the device captured. It is, though, consistent with the officer's testimony that the Defendant failed to signal as required for

one hundred feet prior to turning. The Defendant disputes this testimony and what the video captured, and does so with his own description of what is recorded. (Def's Brief Page 5). It is there in his brief for the Court's discretion. Relevantly, though, in that description the Defendant makes no claim, nor could he given the scope of evidence at issue, that the video establishes he had in fact complied with the actual legal requirement for signaling his turn. And despite asserting in his brief that he did "activate his blinker before turning on Linn Street and did so not less than 100 feet before he turned," the record contains no such evidence. What it does contain is the officer's testimony of his clear-sighted observation of the Defendant's continuously unsignaled approach toward the intersection, video evidence of the Defendant's lack of signal while positioned far fewer than one hundred feet before that intersection, and the Officer's further testimonial coordination of the two. This amounts to probable cause the Defendant violated CMC § 506.80.

**2. Officer Sarchet had probable cause to believe the Defendant violated O.R.C. § 4513.241**

At the suppression hearing, Officer Sarchet testified that at multiple points before he pulled the Defendant over on the above date, he noticed that the back and side windows of his car were excessively tinted (TR 18, 19). In addition to the above turn signal violation, the Officer stopped the Defendant for this violation of ORC § 4513.241[1]. This statute prohibits tinted glass "in or on motor vehicle windshields, side windows, sidewings, and rear windows that prevent a person of normal vision looking into the motor vehicle from seeing or identifying persons or objects inside the motor vehicle." This is, in fact, what the officer testified to at the hearing, that he had difficulty seeing through the back and side windows of the Defendant's motor vehicle. (TR 19). The dash camera footage confirms the officer's description of the windows' opacity. (Gov Exh. 2.) The Court can see from review of the above statue that, despite the Defendant's

---

[1] The Defendant cites the relevant statute as "ORC § 4513.24." As a point of clarification, the correct statute section is "4513.241."

assertion that "any amount of window tint" can legally be used on the back and rear windows, Ohio law actually prohibits the sort of tint Officer Sarchet described on the Defendant's car in the areas where he described it.

From there, the Defendant's assertion that the Officer initiated his traffic stop only for the turn signal violation is clearly refuted by the record that the Defendant cites in his brief. (Def's Brief Page 6). As captured on the above-referenced page 30 of the Transcript, the Officer testified he used his foot approach toward the Defendant's car, not as the basis for his stop, but to confirm his prior appraisal of the Defendant's window tint made at the same time he observed the Defendant's turn signal violation (TR 44).

As to the Defendant's contention that it is not possible for someone on the date and at the time in question and from the distance at issue to observe window tint to be in excess of the legally prescribed amount, the video evidence adduced by the Government clearly refutes it and is of course available for the Court's discretion as well on that point.

For the foregoing reasons, the Officer had probable cause to stop the Defendant for violation of ORC § 4513.241 on the day in question.

**3. The Officer's belief in the law's he cited violations for was correct.**

The Defendant asserts that an officer who bases a probable cause determination for a stop on an incorrect belief in what the law is will not have that probable cause sanctified by the good faith of his belief. This contention is here irrelevant. The Officer's assertion of what constitutes a violation of ORC § 4513.241 is correct. In fact, the Defendant misstates the requirements under it in his brief as cited above. Officer Sarchet thus had probable cause to stop the defendant for violation of this statute.

## CONCLUSION

For the reasons set forth herein, the United States respectfully requests Britton's Motion to Suppress Evidence be denied.

Respectfully submitted,

DAVID M. DEVILLERS
United States Attorney

*s/John Zachary Kessler*
JOHN ZACHARY KESSLER (0090932)
Special Assistant United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: 513-639-2482
Fax: (513) 684-6385
E-mail: Zach.Kessler@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Response to Defendant's Motion to Suppress (Doc. 34) was filed with the Court's CM/ECF System this day, December 11, 2019, which provides electronic notice to all parties.

*s/John Zachary Kessler*
JOHN ZACHARY KESSLER (0090932)
Special Assistant United States Attorney