# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

United States of America,

    Plaintiff,

v.

Timothy Britton,
*also known as*
Kelvin Sanders,

    Defendant.

Case No. 1:19-cr-00014

Judge Michael R. Barrett

## **ORDER**

This matter is before the Court on Defendant's Motion to Suppress evidence and statements (Doc. 18) and the Government's Response thereto (Doc. 21). The Court conducted an evidentiary hearing on November 20, 2019, (Doc. 32) and the parties submitted post-hearing briefing (Docs. 34, 35, 36).

### I. FACTS

The following facts were revealed at the evidentiary hearing. Cincinnati Police Officer Caleb Sarchet testified that, on October 29, 2018, at approximately 7:30 PM, he observed Defendant driving a black Chevrolet Impala down Poplar Street and then observed Defendant turn his car from Poplar Street right onto Linn Street, without activating his signal until he was already in the intersection. (Doc. 33 at PageID 75-76, 82). Following the alleged improper use of Defendant's turn signal, Officer Sarchet executed a traffic stop of Defendant's car at 508 Findlay Street. (*Id.* at PageID 76-77). According to Officer Sarchet's testimony, the sole basis for the stop was that Defendant failed to activate his turn signal prior to one hundred feet of the

intersection. (*Id.* at PageID 30).

The parties agree on the following facts in their briefing. *Compare* (Doc. 18 at PageID 31-32), *with* (Doc. 21 at PageID 40-41). After initiating the traffic stop, Officer Sarchet approached Defendant's car and requested that Defendant roll down the car's tinted windows. *Id.* When Defendant ultimately complied, Officer Sarchet allegedly smelled the odor of marijuana emanating from the car and observed a digital scale with what looked like drug residue sitting in the cup holder in plain view. *Id.* Consequently, Officer Sarchet removed Defendant from the vehicle, frisked Defendant for weapons, and placed Defendant in the back of a police cruiser. *Id.* Officer Sarchet's subsequent search of Defendant's car recovered a digital scale, marijuana inside a plastic container in the center console, a .9mm Taurus pistol with the safety on, and nine rounds of ammunition. *Id.* While traveling to the Hamilton County Justice Center, Defendant allegedly told Officer Sarchet that the marijuana and pistol were his. *Id.*

Defendant was charged in state court with having a weapon under disability, carrying a concealed weapon, improper transportation of a firearm in a motor vehicle, drug paraphernalia, and drug possession. *Id.* He was also cited for having car window tint in violation of Ohio Revised Code § 4513.241 ("Rules governing materials used in windshields and windows; exceptions; records") and improper change of course in violation of Cincinnati Municipal Code § 506-80 ("Changing Course of or Stopping Vehicle"). *Id.* While these states charges were pending,[1] the Government adopted the case for federal prosecution. *Id.* On February 13, 2019,

---

[1] A judge later dismissed the state charges.

a Grand Jury indicted Defendant on one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1). (Doc. 1). Defendant filed the pending Motion to Suppress. (Doc. 18). On September 11, 2019, a Grand Jury returned a single-count superseding indictment against Defendant for violation of the same statute. (Doc. 27).

Defendant argues that he did not commit a traffic violation, the officer did not have probable cause to stop his car, the stop violated his Fourth Amendment rights, and all evidence seized and statements obtained as fruits of the unlawful stop must be suppressed. (Docs. 18, 34, 36). The Government responds that Defendant's act of turning his car from Poplar Street right onto Linn Street, without activating his signal until he was already in the intersection, which Officer Sarchet observed, violated CMC § 506-80 and gave Officer Sarchet probable cause to initiate the traffic stop. (Docs. 21, 35).

## II.  ANALYSIS

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. An ordinary traffic stop by a police officer is a "seizure" of one's "person" within the meaning of the Fourth Amendment. *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012) (quoting *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). "A police officer legally may stop a car when he has probable cause to believe that a civil traffic violation has occurred."[2] *Blair*, 524 F.3d at 748; *United States v. Huff*,

---

[2] If there is an ongoing traffic violation, *e.g.*, an individual driving with a suspended license, the officer must have a reasonable suspicion that there is a traffic violation to stop a car. *U.S. v. Simpson*, 520 F.3d 531, 541 (6th Cir. 2008). "Every circuit—except for the Sixth Circuit—has held that reasonable suspicion suffices to justify an investigatory stop for a traffic violation." *United States v. Hawkins*, No. 3:19-CR-00110, 2019 WL 6050278, at *1 (M.D. Tenn. Nov. 15, 2019). "The Sixth Circuit, however, applies 'the probable cause standard to "completed" misdemeanor traffic violations.'" *Id*

630 F. App'x 471, 495 (6th Cir. 2015) (Barrett, J., sitting by designation, concurring).[3]

The Sixth Circuit defines probable cause as "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990).

Although "a police officer that observes any traffic violation may stop the driver to issue a citation for the infraction," an investigative or pretextual stop is improper if no traffic violation has occurred. *United States v. Franklin*, No. 18-CR-20492, 2018 WL 6804154, at *2-3 (E.D. Mich. Dec. 26, 2018) (citing *Blair*, 524 F.3d at 748 and *United States v. Huguenin*, 154 F.3d 547, 552-59 (6th Cir. 1998)). The inquiry before the Court is whether Officer Sarchet "'had an objectively verifiable reason' for pulling over Defendant's [car] in light of the facts and circumstances known to [Officer Sarchet] at the time of the stop." *Huff*, 630 F. App'x at 496 (quoting *United States v. Tullock*, 578 F. App'x. 510, 513 (6th Cir. 2014)).

Cincinnati Municipal Code § 506-80 provides, in pertinent part, that

> No person shall turn a vehicle in an intersection unless the vehicle is in proper position upon the roadway as required in Section 506-84 . . . unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement.
> (a) When required, a signal of intention to turn or move right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning.

Cincinnati Mun. Code § 506-80. Cincinnati Municipal Code § 506-84 ("Turning at

---

[3] In *Huff*, Judge Boggs "delivered the judgment of the court and issued an opinion that constitutes the opinion of the court except with respect to Sections II.A and II.B.1" and the undersigned "delivered a separate concurring opinion, in which" Judge Moore joined. *Huff*, 630 F. App'x at 474 ("To the extent that this opinion is inconsistent with the concurring opinion, the concurring opinion constitutes the opinion of the court.").

4

Intersections") provides, in relevant part, that "[e]xcept as otherwise provided, the driver of a vehicle intending to turn at an intersection shall do so as follows: [] Approach for a right hand turn and a right hand turn itself shall be made as close as practicable to the right hand curb or edge of the roadway." Cincinnati Mun. Code § 506-84(a).

The video evidence from Officer Sarchet's cruiser camera reveals that Defendant activated his turn signal prior to approaching the stop sign at the intersection of Poplar Street and Linn Street and prior to turning from Poplar Street right onto Linn Street. (Govt. Exhibit 2). The video also show that Defendant's car approached that stop sign close to the righthand curb and that, after Defendant made the right turn, he proceeded in a legal manner for some distance and safely pulled to the curb when Officer Sarchet activated his police cruiser's overhead lights. (*Id.*). Moreover, the video reveals that Defendant completed the right-hand turn with reasonable safety and no other traffic might have been affected by his movement. (*Id.*). In short, the video evidence establishes that Defendant made the right turn at the intersection in accordance with CMC Sections 506-80 and 506-84 after coming to a complete stop.[4]

Based on the evidence in this case, the Court finds that Officer Sarchet did not have an objectively verifiable reason for pulling over Defendant's car at the time of the stop on October 29, 2018. *See Huff*, 630 F. App'x at 496; *Tullock*, 578 F. App'x. at 513. Consequently, Officer Sarchet did not have probable cause to believe that Defendant violated CMC § 506-80, the October 29, 2018 traffic stop was unlawful, and any evidence and statements obtained during that traffic stop must be suppressed as fruit

---

[4] In light of Officer Sarchet's testimony clarifying that the sole basis for the traffic stop was Defendant's alleged turn signal violation, (Doc. 33 at Page 30), the Court need not analyze whether Officer Sarchet had probable cause to belief Defendant violated Ohio Revised Code § 4513.241.

of the poisonous tree. *See Huff*, 630 F. App'x at 495; *Jackson*, 682 F.3d at 453.

As a final matter, the Court finds the facts of the Supreme Court's decision in *Heien v. North Carolina*, 135 S. Ct. 530, 539 (2014), distinguishable from the facts of this case. In *Heien*, a police officer stopped a car that the defendant was a riding as a passenger in, in part, because the car only had one working brake light and the police officer incorrectly believed that only having one working brake light violated North Carolina law. *Id.* at 534-35. The Supreme Court held that that a police officer's objectively reasonable mistake of law can give rise to reasonable suspicion.[5] *Id.* at 539-40. In this case, Officer Sarchet stopped Defendant's car solely because he believed that Defendant violated CMC § 506-80. (Doc. 33 at Page 30). However, the video evidence reveals that Defendant did not do so. (Govt. Exhibit 2). Hypothetically, if a police officer's alleged sole basis for a traffic stop was that a defendant ran a "green light" (which is obviously not a traffic violation), the Court doubts that the Supreme Court would determine that police officer's action to be objectively reasonable, as disregard of fact and law are not the same as a mistake of fact and law.

---

[5] The Court acknowledges that the Supreme Court's decision in *Heien* analyzes the constitutionality of the stop at issue in that case under reasonable suspicion and not probable cause. *Id.* at 539. However, similar to a colleague in this District, "this Court has no reservation in extending *Heien*'s rational to the probable cause analysis, especially given that the Supreme Court's decision is based in part on nineteenth century precedent that it characterized as establishing the proposition that a mistake of law can support a finding of probable cause." *J Mack LLC v. Leonard*, No. 2:13-CV-808, 2015 WL 519412, at *9 (S.D. Ohio Feb. 9, 2015) (citing *Heien*, 135 S. Ct. at 537).

## III. CONCLUSION

In light of the foregoing, it is hereby **ORDERED** that Defendant's Motion to Suppress (Doc. 18) is **GRANTED**.

**IT IS SO ORDERED.**

                                                _s/ Michael R. Barrett_____
                                                Michael R. Barrett
                                                United States District Judge